UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHRISTOPHER W. HOOK,

        Plaintiff,

v.                                               Case No. 3:21-cv-9-MMH-JBT

LIEUTENANT McCRAY,
et al.,

        Defendants.
_____

## ORDER OF DISMISSAL WTHOUT PREJUDICE

Plaintiff, Christopher W. Hook, initiated this action in the Southern District of Florida by filing a Civil Rights Complaint alleging claims of excessive force, deliberate indifference, and retaliation. See Doc. 1. Finding, among other things, that the Complaint was an impermissible "shotgun" pleading with allegations bearing no logical relationship, the Honorable Lisette M. Reid, United States Magistrate Judge, directed Hook to file an amended complaint. See Doc. 5. Hook filed an Amended Complaint (Doc. 20), and the Honorable Jose E. Martinez, United States District Judge, transferred the action to this Court (Doc. 31).

Because Hook again raised several unrelated claims involving allegations and events that occurred on different days, this Court directed Hook to file a second amended complaint. See Doc. 37. In doing so, the Court

advised Hook that he "must choose one claim or related claims," and "focus his factual allegations on how each named defendant violated his rights." Id. at 3. The Court also explained that "the claims that are unrelated to the events that [Hook] chooses to pursue in this action may be pursued in a separate civil rights case." Id. The Court also cautioned Hook that "failure to comply may result in dismissal of this action." Id. at 6.

Before the Court is Hook's Second Amended Complaint. See Doc. 40 (SAC). He names eleven Florida Department of Corrections (FDOC) officers and employees as Defendants: Lieutenant Anthony McCray; John Does One through Six, who are members of the Reception and Medical Center's (R.M.C.) rapid response team; John Doe Seven, R.M.C.'s Chief of Security; Joseph Edwards, Warden of R.M.C.; Dr. Sharma; and A. Vargas, Confinement Nurse. Id. at 1-2.

The allegations of the SAC involve a series of events that occurred between January 16, 2019 and January 30, 2019, while Hook was housed at R.M.C. According to Hook, on January 16, 2019, following an inmate assault at another prison facility, FDOC officials transferred Hook to R.M.C. for emergency medical treatment of a broken jaw and placed Hook in administrative confinement. Id. at 5. Hook alleges that upon arriving at R.M.C., Defendant Sharma conducted a preliminary medical assessment and determined that Hook had no known medical risk factors to prevent chemical

agents from being used on him, and "Jane Doe One checked the box stating that [Hook] had no known medical risk factors that would prevent chemical agents being used on him." Id. at 4-5. However, according to Hook, when he first entered FDOC custody, he "was issued a no contact with chemical pass" because he advised "medical staff" that he suffered from epilepsy and that some strong smells induced seizures. Id. at 6. Hook also alleges that on January 17, 2019, and every day after, he "notified the on duty nurse that he had not received his prescribed seizure medication," and asserts that he started receiving his seizure medication on January 20, 2019. Id. Hook further states that he did not receive pain medication for his broken jaw between January 16, 2019, and January 20, 2019. Id. at 6.

Hook contends that on January 22, 2019, Defendant McCray placed him on property restriction, confining Hook to a nonheated cell in 25-to-45-degree temperatures without blankets or bedding. Id. According to Hook, when he advised McCray that he planned to notify his family and the warden about McCray's conduct, McCray responded "I got you." Id. at 6. Hook asserts that McCray then said something about "disorderly conduct," and a few minutes later, Hook's cell door opened and six rapid response team members rushed in, sprayed Hook with chemical agents, slammed him to the ground, struck Hook in the head and body with their fists and feet, and placed Hook in restraints. Id. at 6-7. Hook took a five-minute decontamination shower before officers

3

returned Hook to his freezing cell with just his underwear. Id. at 7. Hook then realized that his nose had been broken from the altercation. Id. According to Hook, McCray issued a Disciplinary Report for Disobeying a Verbal Order, alleging Hook was "slamming the lid of his locker" and McCray asked Hook to stop. Id.

Hook also asserts that despite having a broken jaw and a prescribed liquid diet, McCray placed Hook on management loaf, and the loaves that Hook was provided were frozen and impossible to eat. Id. Because of these conditions, Hook alleges he was unable to sleep and was in extreme pain. Id. Hook also alleges that despite having a "no housing alone pass," officials moved Hook's roommate out of their shared cell. Id.

Hook states that on January 24, 2019, after 40 hours of no sleep and freezing temperatures, Officer Aylon found Hook on the floor of his cell having a seizure. Id. at 8. Security entered Hook's cell and secured him, and when medical arrived, medical accused Hook of faking the seizure and refused to treat him. Id. The next day, Hook was removed from property restriction, but remained on management loaf. Id. However, on January 26, 2019, "a captain" again placed him on property restriction because Hook's roommate left his drinking cup on the sink. Id. That same day, Hook alleges that he declared a psychological emergency and Officer Cartwright escorted Hook to urgent care, and during the escort, Cartwright advised Hook that McCray fabricated the

4

DR allegations, so he could use chemical agents and the cell extraction team. Id.

Following his release from urgent care, the DR court found Hook not guilty of the rule infraction, but apparently skewed the facts supporting the DR to justify the use of force. Id. According to Hook, on January 30, 2019, he and several other inmates were released from confinement and "all the other inmates were promptly assigned new housing while [Hook] was made to sit in the holding cell awaiting housing." Id. at 9. He asserts that he was then assigned to a cell "not observed by the camera." Id. Hook contends that he spoke with "John Doe One Chief of Security at RMC" about his conditions, but "John Doe One advised [Hook] that since he beat the DR he should avoid filing any grievances because things could get 'much worse.'" Id. at 9. Hooks asserts that despite this warning, he filed a direct grievance with the Secretary detailing his stay in confinement. Id. Then, before his transfer out of R.M.C., Hook asserts that inmate Gene Higinbotham robbed him at knife point. Id. Hook argues that during his time at R.M.C., he observed Higinbotham interacting with officers. Id.

According to Hook, because of McCray's actions, he suffered extreme pain, a broken nose, bruises, a life-threatening seizure, and lost 8 pounds in 10 days. Id. Hook also asserts that the lack of pain medication caused him to "endure the extreme pain of his broken jaw," and that the "medical staff's"

failure to provide him with his antiseizure medication for several days contributed to his seizure. Id. As relief, he requests $5,000,000 in punitive damages, $1,000,000 in compensatory damages, and nominal damages. Id. at 9-10.

Upon review, Hook's SAC is subject to dismissal for his failure to comply with the Court's Order to amend and because he fails to state a claim.

## I. Failure to Comply

A district court has discretion, under the Federal Rules of Civil Procedure 41(b), to dismiss a pro se plaintiff's action for his failure to comply with court rules or a court order. See Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989) ("[D]ismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion.").

> Rule 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Rule 41(b) provides the district court "discretion to impose sanctions on a party who fails to adhere to court rules." Zocaras,[1] 465 F.3d at 483. A district court may sua sponte dismiss a case under Rule 41(b). Betty K Agencies, Ltd. v. M/V Monada, 432 F.3d 1333, 1337 (11th Cir.2005).

Powell v. Harris, 628 F. App'x 679, 680 (11th Cir. 2015) (holding the district court did not abuse its discretion dismissing the case without prejudice for the

---

[1] Zocaras v. Castro, 465 F.3d 479 (11th Cir. 2006).

6

plaintiff's noncompliance with the court's instructions to file a proper complaint). See also Duong Thanh Ho v. Costello, 757 F. App'x 912, 914-15 (11th Cir. 2018) (affirming the district court's dismissal without prejudice for the pro se plaintiff's failure to comply with the court's order to amend).

Despite the Court's instructions and warning, Hook's SAC suffers from the same deficiencies as the Amended Complaint. Hook again improperly joins multiple, unrelated claims for alleged violations that have no logical relationship. From what the Court can decipher, Hook tries to allege claims of excessive force, deliberate indifference to serious medical needs, deliberate indifference to conditions of confinement, and retaliation. See generally SAC. But he "does not separate each cause of action or claim for relief into a different count" and he "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Barmapov v. Amuial, 986 F.3d 1321, 1325 (11th Cir. 2021) (internal quotations and citations omitted). Although Hook may try to allege that these federal constitutional violations are a series of related events, the events on which he bases these claims have little factual overlap. Indeed, Hook "appears to attempt to provide the relationship through vague and conclusory allegations of retaliation and conspiracy (primarily through [D]efendant McCray), which does not suffice." Doc. 5 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Hook also fails to

specify the acts or omissions of <u>each</u> Defendant that allegedly violated his rights, and thus he has not provided Defendants with adequate notice of the claims against them. For these reasons, Hook's SAC is due to be dismissed. <u>See</u> <u>Smith v. Owens</u>, 625 F. App'x 924, 928-29 (11th Cir. 2015) (affirming the district court's dismissal of the plaintiff's complaint against ten corrections officers for unrelated excessive-force incidents for the plaintiff's noncompliance with Rule 20).

## II. Failure to State a Claim

The Prison Litigation Reform Act (PLRA) requires a district court to dismiss a complaint if the court determines the action is frivolous, malicious, or fails to state a claim on which relief may be granted. <u>See</u> 28 U.S.C. § 1915(e)(2)(B). With respect to whether a complaint "fails to state a claim on which relief may be granted," the language of the PLRA mirrors the language of Rule 12(b)(6), Federal Rules of Civil Procedure, so courts apply the same standard in both contexts. <u>Mitchell v. Farcass</u>, 112 F.3d 1483, 1490 (11th Cir. 1997); <u>see also</u> <u>Alba v. Montford</u>, 517 F.3d 1249, 1252 (11th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft</u>, 556 U.S. at 678 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not

8

suffice. Id. (quotations, alteration, and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted).

In reviewing a pro se plaintiff's pleadings, a court must liberally construe the plaintiff's allegations. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011). However, the duty of a court to construe pro se pleadings liberally does not require the court to serve as an attorney for the plaintiff. Freeman v. Sec'y, Dept. of Corr., 679 F. App'x 982, 982 (11th Cir. 2017) (citing GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998)).

Hook's SAC is subject to dismissal under this Court's screening obligation because he fails to "state a claim to relief that is plausible on its face." See Iqbal, 556 U.S. at 678. To state a claim under § 1983, a plaintiff must allege "(1) both that the defendant deprived [him] of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law." See Bingham, 654 F.3d at 1175 (alteration in original).

Liberally read, Hook's SAC fails to state a plausible § 1983 claim. As to any claim of excessive force, the core inquiry is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

9

sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). "If force is used maliciously and sadistically for the very purpose of causing harm, then it necessarily shocks the conscience. If not, then it does not." Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (internal quotation marks and citations omitted). As with other Eighth Amendment claims, the Court must consider both a subjective and an objective component: (1) whether the "officials act[ed] with a sufficiently culpable state of mind," and (2) "if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Hudson, 503 U.S. at 8.

Hook fails to allege sufficient facts to connect any Defendant to his allegations of excessive force. While Hook appears to connect McCray to the use of force, he does not allege that McCray ordered the cell extraction or that McCray participated in the use of force. Instead, he only presents vague and conclusory allegations that another officer insinuated to Hook days after the cell extraction that McCray was involved. As to the John Doe members of the rapid response team, the Eleventh Circuit has held that, generally, "fictitious-party pleading is not permitted in federal court," unless a plaintiff describes a John Doe defendant with such particularity that he or she can be identified and served. See Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010) (affirming dismissal of a John Doe defendant where the plaintiff's complaint

10

failed to identify or describe the individual "guard" allegedly involved); Williams v. DeKalb Cnty. Jail, 638 F. App'x 976, 976–77 (11th Cir. 2016) ("A fictitious name . . ., when the real defendant cannot be readily identified for service, is insufficient to sustain a cause of action."). Cf. Dean v. Barber, 951 F.2d 1210, 1215 n.6, 1216 (11th Cir. 1992) (holding the district court erred in denying a motion to join a John Doe defendant because the plaintiff described the individual with sufficient clarity and precision such that the inclusion of his name would have been "surplusage"). Hook fails to provide the Court with any identifying information of the John Doe Defendants involved in the cell extraction. And simply saying "John Does" not provide the specificity required to avoid the fictitious-party pleading rule. See, e.g., Isles v. Does 1, No. 3:18-cv-632-J-32JRK, 2018 WL 2317969, *2 (M.D. Fla. May 22, 2018).

Hook also fails to allege an Eighth Amendment claim regarding the conditions of his confinement or the alleged lack of medical treatment. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). "To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's

11

conduct." Oliver v. Fuhrman, 739 F. App'x 968, 969 (11th Cir. 2018) (citing Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)). The Eleventh Circuit has explained:

> Under the objective component, a prisoner must allege a condition that is sufficiently serious to violate the Eighth Amendment. Id.[2] The challenged condition must be extreme and must pose an unreasonable risk of serious damage to the prisoner's future health or safety. Id. The Eighth Amendment guarantees that prisoners are provided with a minimal civilized level of life's basic necessities. Id.
>
> Under the subjective component, a prisoner must allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference. Id. This means the prisoner must show that the prison officials: (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) displayed conduct that is more than mere negligence. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003).

Oliver, 739 F. App'x at 969-70. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986)

To state a claim that his conditions of confinement violated the Eighth Amendment, Hook must allege that the defendant was deliberately indifferent to conditions that were "sufficiently serious." Chandler, 379 F.3d at 1288.

---

[2] Chandler, 379 F.3d at 1289.

12

Conditions of confinement are sufficiently serious under the Eighth Amendment only if they are so extreme that they expose the prisoner to "an unreasonable risk of serious damage to his future health or safety." Id. at 1289. Allegations of merely harsh conditions do not state a claim under the Eighth Amendment. Id.

Hook alleges that McCray placed him on property restriction on January 22, 2019 and that he was removed from that property restriction on January 25, 2019.[3] This short-lived, 4-day property restriction, in and of itself, does not amount to the type of extreme deprivation that violates contemporary standards of decency. Although Hook complained that he was cold, "'a prisoner's mere discomfort, without more, does not offend the Eighth Amendment.'" Turner v. Warden, GDCP, 650 F. App'x 695, 701 (11th Cir. 2016) (quoting Chandler, 379 F.3d at 1295). Also, while Hook claims he had a seizure on the last day of this property restriction, he fails to claim that McCray knew Hook suffered from epilepsy, that McCray was responsible for failing to provide Hook with his antiseizure medication, or that McCray otherwise had subjective knowledge of any risk of serious harm to Hook.

Likewise, while Hook argues that McCray placed him on management loaf when he should have been prescribed a liquid diet, Hook fails to allege that

---

[3] Hook alleges that "a captain" again placed Hook on property restriction on January 26, 2019.

McCray had subjective knowledge that Hook could not consume the provided meals. While Hook argues that it was painful to eat the loaves with his injured jaw, it is unclear if the solid meals were causing Hook's alleged pain or whether Hook's pain stemmed from medical's alleged failure to provide Hook with pain medication. Consequently, these conditions do not rise to the level of cruel and unusual deprivations.

As to Hook's claim that Defendants were deliberately indifferent to his serious medical needs, Hook again fails to present factual allegations sufficient to satisfy the subjective component of an Eighth Amendment claim. He fails to allege that any named Defendant had subjective knowledge of Hook's epilepsy, jaw injury, or nose injury. Indeed, Hook fails to allege that he advised Sharma of his medical conditions during his initial assessment, and he fails to otherwise allege that he advised McCray of any medical ailment. Instead, Hook merely contends that he notified the "on duty nurse" about his need for medication. Further, Hook fails to allege that any named Defendant disregarded an excessive risk to his health by conduct that was more than mere negligence. Instead, he attributes any denial of medical treatment to unnamed individuals who allegedly failed to provide him with his regular medications or properly treat him following his seizure. As such, these facts do not demonstrate an Eighth Amendment violation.

14

Finally, Hook fails to allege a retaliation claim as to any Defendant. "The core of [a retaliation claim brought pursuant to 42 U.S.C. § 1983] is that the prisoner is being retaliated against for exercising his right to free speech." O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (per curiam) (citation omitted). It is firmly established that "an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). Further, it is firmly established that an inmate may pursue a cause of action against a prison official who retaliated against him for engaging in that protected speech. Id. Three elements are involved in these retaliation claims:

> 1) [the inmate's] speech was constitutionally protected; 2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and 3) there is a causal relationship between the retaliatory action and the protected speech.

Smith, 532 F.3d at 1276. To establish the third prong, a plaintiff must do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to prove the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (citations omitted). "In other words, the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's grievance or lawsuit."

15

Jemison v. Wise, 386 F. App'x 961, 965 (11th Cir. 2010) (per curiam) (citation omitted) (finding the district court erred by dismissing a complaint alleging retaliation with prejudice, "regardless of whether the retaliation claim ultimately [would] ha[ve] merit").

Hook fails to allege a causal relationship between the alleged retaliatory action (inmate Higinbotham's attack) and the protected speech (filing a direct grievance). His assertions that he saw Higinbotham interacting with many officers is vague, conclusory, and wholly insufficient to assert a plausible claim to relief. As such, the SAC is due to be dismissed.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1. This case is **DISMISSED without prejudice**.

2. The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of November, 2021.

*[signature]*
MARCIA MORALES HOWARD
United States District Judge

Jax-7

C:   Christopher Hook, Y44968